In re Lloyd Sanford CLIFTON, Sr., aka: L. Clifton & Son, aka: Lloyd Clifton, aka: Lloyd S. Clifton, Marjorie Eileen Clifton, aka: Marjorie E. Clifton, aka: Marjorie Clifton, Debtors.

Bankruptcy No. 2-81-02261.

United States Bankruptcy Court, S. D. Ohio, E. D.

Nov. 16, 1981.

Michael L. Miller, Columbus, Ohio, for debtors.

Frank Pees, Trustee, Worthington, Ohio.

ORDER ON OBJECTION TO ALLOWANCE OF CLAIM

R. J. SIDMAN, Bankruptcy Judge.

The Chapter 13 debtors, Lloyd and Marjorie Clifton, have objected to the claim filed in this case by Herbert K. Spohn and Frances A. Spohn ("Spohns") in the amount of $4,325.00. The matter was set for hearing by the Court, and there was no appearance or defense raised by the Spohns, other than a pleading addressed "To Clerk of Bankruptcy Court" in which the Spohns, without the benefit of legal counsel, set forth their reasons why their claim should be allowed. The Court makes the following findings of fact.

Lloyd Clifton had been an employee of Val Spohn & Son Roofing and Metal Contractors (Spohn Roofing) almost continuously since 1947. Lloyd Clifton is a roofer by trade, and in connection with his employment with Spohn Roofing had occasion to become familiar with, and establish a close relationship with, many of Spohn Roofing's customers. In August of 1977, the Cliftons and the Spohns entered into an agreement by which the Spohns sold the roofing business to the Cliftons. The contract is brief and straightforward—the Spohns sold all their right, title, and interest in and to a business known as Val Spohn & Son Roofing and Metal Contractors, including all inventory, automobiles, equipment, good will, right to use the name of the company, and supplies, (with the exception of certain office furniture and equipment), and accounts receivable and records, to the Cliftons in consideration for the agreement by the Cliftons to pay to the Spohns, or the survivor of them, $150.00 per week for and during the natural life of either or both of them. Lloyd Clifton testified that he was aware that the price to be paid for the business was, in effect, open-ended, depending upon the length of time the Spohns were to survive. The Cliftons, however, were not unaware of the nature and extent of the Spohn Roofing business and presumably made a reasoned choice to enter into the agreement. The Spohns, who are in their

eighties, apparently have survived longer than the Cliftons anticipated, for the Cliftons are now complaining that the price they have paid for the business is grossly in excess of its value. Specifically, the Cliftons allege that the total value of assets conveyed to them under the terms of the agreement with the Spohns was $6,200.00 and that they have paid, to date, over $26,000.00 to the Spohns, with payments continuing to accrue under the terms of the agreement. The Cliftons object to the claim of the Spohns and seek to have this Court declare that the agreement executed in August of 1977 is unconscionable and also that its enforcement should be excused for failure of adequate consideration.

The Cliftons rely upon the provisions of § 1302.15 of the Ohio Revised Code to support the avoidance of the claim of the Spohns on unconscionability grounds. This statute provides:

"If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." § 1302.15(A), Ohio Rev.Code.

The reliance of the Cliftons on this statute is misplaced. Initially, there is some question as to whether or not the contract involved in the present situation, which is one for the sale of a business, is one which is covered under this provision of the Ohio Revised Code which concerns the sale of "goods". While a transfer of goods was incident to the sale of the business, the contract contemplated more than a mere transfer of tangible assets, it contemplated the transfer of a "going concern" business and its attendant good will, customer lists, and other similar intangible items. These "intangibles" formed part of the consideration for the agreement and provide support for the position that the market value of the tangible assets is not a fair measure of the adequacy of the consideration. Second-

ly, as the statute clearly states, the Court must find as a matter of law that the contract, or any clause of the contract, was unconscionable "at the time it was made". There is no evidence in the record before the Court that the contract was unconscionable at the time it was made. Lloyd Clifton testified that he understood the nature of the contract at the time it was signed, and it does not appear that the contract terms were then unreasonable. Subsequent events have apparently changed the perspective of the Cliftons on the fairness of the terms of the contract. However, the traditional view taken by courts of law is that competent adults may make contracts on their own terms provided they are neither illegal nor contrary to public policy.

"People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability." *Carlson v. Hamilton*, 8 Utah 2d 272, 332 P.2d 989 (Utah, 1958).

Given the benefit of hindsight, the Cliftons may indeed honestly feel that they received a bad bargain from the Spohns. However, the evidence in this record is insufficient to cause this Court to invoke the extreme remedy of declaring the contract unconscionable and denying the enforcement of a claim arising under the terms of the contract. Again, the Cliftons were not strangers to the business and are presumed to know and understand the consequences of their acts. Without evidence of overt fraud, and none is in this record, the agreement should be enforced.

The Cliftons raise implicitly in their objection to the claim of the Spohns a question as to whether their interests were adequately represented by an attorney at law who was involved in the drafting of the contract. It is at least hinted that that attorney, while purporting to represent their interests, in fact represented the interests of the Spohns and thus any reliance or trust placed by the Cliftons in that attorney was ill-advised and to their detriment. Such a claim, if true, may be a reason for the Cliftons to assert some liability against that attorney; however, it does not alter the result in this case, that the claim of the Spohns is a valid and allowable one in this Chapter 13 case.

Based upon the foregoing, the Court hereby determines that the objection to the claim of the Spohns is without merit and it is hereby overruled.

IT IS SO ORDERED.